No. 22,502.

W. R. McGREW, *Appellee*, v. THE IDE ESTATE INVESTMENT COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. BUILDING CONTRACT—*Breach by Owner of Building—Measure of Damages.* The measure of damages for the breach of a building contract where the plaintiff has been wrongfully prevented from fully performing, is the difference between what it would cost to complete the entire work according to the contract, and the contract price. The same result may be reached by allowing the plaintiff, as damages for the work done, such proportion of the entire price as the fair cost of that work bears to the fair cost of the whole work, and in respect to the work not done such profits as the evidence shows he would have realized by doing it.

2. SAME—*Breach—Measure of Damages—Erroneous Instruction.* In an action by a contractor to recover for the breach of a building contract, an instruction which charges that if the defendant owner breached the contract, the measure of plaintiff's damages was the profit he would have made on the contract in addition to the reasonable value of the work already performed, is erroneous because, the action being upon the contract, plaintiff was not entitled to recover the reasonable value of the work performed, except as determined by the contract price, and as to the uncompleted work only such profit as the evidence showed he would have realized had he not been prevented from performance.

3. SAME—*Breach—Recovery of Anticipated Profits.* Anticipated profits can be recovered only when they are made reasonably certain by competent proof of facts furnishing a rational estimate of their amount. In this case it is held that there was no competent evidence to show what profit, if any, the plaintiff would have made had he not been prevented from completing the work; his own statement on the witness stand that he would have made a profit of a certain amount was of no probative force. (*Town Co. v. Leonard*, 46 Kan. 354, 26 Pac. 717.)

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed February 7, 1920. Reversed.

*O. L. Miller*, of Kansas City, *H. L. McCune, H. M. Noble, R. B. Caldwell, Blatchford Downing*, and *Lynn Webb*, all of Kansas City, Mo., for the appellant.

*David F. Carson*, of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In this action the plaintiff recovered a judgment for damages for the alleged breach of a building contract. The defendant appeals.

The plaintiff resides in Kansas City, Kan., and is a contractor. On December 7, 1917, he entered into a contract with the Ide Estate Investment Company, a corporation, and undertook to do the work of painting, papering and repairing the plaster of a hotel located in Kansas City, Mo., which belongs to the defendant. According to the contract as modified the plaintiff was to receive, when the work was completed, $850, and the defendant was to select and furnish the paper used on the walls. The petition alleged that on the 3d day of January, 1918, without any reason or cause, the defendant ordered plaintiff to quit the work; that at that time he had employed workmen to whom he became obligated to pay $326.30, and if he had been permitted to perform his contract he would have made a profit of $200, and that he lost in all, by breach of the contract, $526.30, for which he asked judgment. The answer was a general denial and a counterclaim alleging that on December 24 plaintiff stopped work and refused to keep men on the job, and on January 3, without reason or cause, repudiated the contract, and that by reason of the plaintiff's breach the defendant was deprived of the use of its building for thirty days, the reasonable value of which was $200. Judgment was asked for the reasonable value of the use of the building for the time defendant was deprived of it, and for certain sums which defendant had paid on the contract.

By the terms of the contract plaintiff agreed to push the work to completion with the least possible delay. There is no dispute over the fact that the work ceased on December 24, and that practically nothing was done from that time until January 3. Plaintiff claimed that his men were called out because of a strike. Mr. Schmelzer, as president of the Ide Estate Investment Company, looked after the business for the defendant, and it appears that he owned a building in Kansas City, Kan., upon which nonunion labor men were employed, and for this reason the labor unions induced plaintiff's em-

ployees to stop work on the hotel in Missouri. The matter was afterwards arranged in some way, and on January 3 plaintiff was back on the job with a number of workmen. The principal dispute in the case arose over which one of the parties breached the contract. McGrew testified that he had some men there at work on that date, and that Schmelzer said to him, "I don't know whether I want you to do this work or not. . . . Your contract is no good, if I don't want you to do it"; that plaintiff said, "Now, Mr. Schmelzer, I am here with the men, and I am going ahead to do the work," to which Schmelzer replied, "You can go to work if you want to, but you won't get a cent until this job is completed entirely." "I said, 'Now, Mr. Schmelzer, I would like to know whether you can pay them some money on orders from me on Saturday.' He said, 'No, not a cent until it is completed. Get your tools off of here. . . . I don't want you on the premises at all,' and I left." On cross-examination he was asked: "When Mr. Schmelzer came there, you said to him that you wanted an understanding that if you went on with the job you would be paid every Saturday night, didn't you? A. Yes, sir."

Mr. Schmelzer testified that it was not until after the plaintiff said he would not go on with the work unless he received money to pay his men on Saturday night, that he told him to get off the work. He was corroborated in this by some of plaintiff's witnesses, including plaintiff's brother, who testified to hearing the conversation between plaintiff and Schmelzer, and that what they were talking about was the demand of McGrew that if he went on with the work he should have pay for his workmen every Saturday night. Notwithstanding the conflict in the testimony of the plaintiff's witnesses on this issue, it was a question for the jury to determine which of the parties breached the contract. (*Acker v. Norman,* 72 Kan. 586, 84 Pac. 531.)

It is conceded that defendant advanced plaintiff $150, and afterwards paid $50 upon claims of plaintiff's workmen who were threatening to file liens, and the evidence shows that defendant paid $878.40 to complete the work which remained to be done. The jury returned a verdict in plaintiff's favor and assessed the amount of his recovery at $423.80, for which sum judgment was rendered.

The principal claim is, that the court erred in the instructions as to the measure of damages, and that the error resulted in a verdict far in excess of any sum justified by the evidence. The objection is to the charge as to the measure of damages in case the jury found that the defendant broke the contract. The court instructed that in that event the plaintiff would be entitled to recover "the amount of money which he had expended and become liable for, for labor and material in performing said work, and also for the profit which he would have earned had he been permitted to complete the same." Passing by the complaint that the latter part of this instruction assumes that the plaintiff would have earned a profit, and that it should have said "the profit, if any, which he would have earned," it states, in our opinion, the wrong measure of damages. If the jury adopted the plaintiff's theory and found that the defendant breached the contract, then plaintiff is only entitled to be placed in the same situation or condition that he would have been had he been permitted to proceed without any interference. Damages are based on the theory of compensation for the loss suffered. The party injured is entitled to recover such damages as are the natural, direct and proximate result of the breach. (*George v. Lane,* 80 Kan. 94, 102 Pac. 55; 2 Sedgwick on Damages, 8th ed., § 618.)

The general rule for the measure of damages for the breach of a contract like this, where a party has been wrongfully prevented from fully performing, is the difference between what it would cost to complete the work according to contract, and the contract price. (*Osborne & Co. v. Stassen,* 25 Kan. 736.) The judgment in that case was reversed for erroneous instructions with respect to the measure of damages. In the opinion it was said:

"The defendant was entitled to recover damages only to the extent of his loss; and if it cost him $20 to set up and start each machine in operation, then his loss on each machine which he did not receive, and therefore did not sell, could not have been more than $40." (p. 737.)

Under instruction No. 6 the jury were permitted to fix the plaintiff's damages for the work done by ascertaining the amount he had expended and become liable for, without respect to the contract price of the entire work. It should have limited the amount of the recovery for the work done to such propor-

tion of the entire price as the fair cost of that work bore to the fair cost of the whole work; and had there been competent proof to make reasonably certain what, if any, profits plaintiff would have realized by performing the whole work if he had been permitted to do so, it would have been proper to allow a recovery for profits in addition. In *Wilson v. Borden*, 68 N. J. L. 627, a case where the contractor under a building contract had been prevented from completing the work by the fault of the owner, it was said in the opinion that the correct rule was formulated by Mr. Justice Dixon in *Kehoe v. Rutherford*, 27 Vroom (N. J. L.), 23, as follows:

"When the plaintiff has been prevented from completing his work by the fault of the owner, the legal measure of damages is generally for the work done such a proportion of the entire price as the fair cost of that work bears to the fair cost of the whole work, and in respect to the work not done such profits as he would have realized by doing it." (p. 630.)

It was further said:

"If the plaintiff had completed one-quarter of the whole work contracted for, he would have been entitled to one-quarter of the contract price; if he had completed one-half, to one-half of the contract price." (p. 630.)

In *Chase v. Smith*, 35 Wash. 631, where plaintiff contracted for a specified sum to do certain work upon a house and after performing part of the work was discharged, it was held error to instruct that the measure of his damages is the profit he would have made on the contract *in addition to the reasonable value of the work already performed.*

It was said in the opinion that the value of the labor already performed must be determined according to the contract price, in the proportion that the same, as it then stood, bears to the entire work which the contractor undertook to perform under the original agreement, and that it was manifest error to give the jury to understand that they might also allow profits on the entire contract, because a recovery at the contract rate for the labor actually performed must necessarily include the profit made by such labor.

"And it was only for profits on the uncompleted portion of the work that he was entitled to recover in addition, and then only after a showing that he would have made such a profit." (p. 635.)

(To the same effect see *Jewett v. Wilmot*, 51 Neb. 700; *Polino v. Keck*, 80 W. Va. 426.)

McGrew v. Investment Co.

Under the terms of the contract here McGrew was to receive $850 for full completion of the work. Of this sum he was paid $150, and in addition $50 more was paid to his workmen, so that if he had completed the contract he would have been entitled to receive $650. The evidence shows that the defendant paid to the contractors who completed the work $743.40 for labor alone, and $135 in addition for material, making the total cost for labor and material for the completion of the work $878.40. There was no competent evidence whatever to show what profit, if any, the plaintiff would have made had he not been prevented from completing the work. His own statement while on the witness stand that he would have made a profit of $200 was of no more probative force than the same statement in his petition. It was the mere statement of plaintiff's opinion upon a question to be determined solely by the jury from facts, not opinions. (*Town Co. v. Leonard*, 46 Kan. 354, 26 Pac. 717.) In the opinion in that case it was said:

"It is the function of the court or jury trying the case to determine from evidence properly presented what the amount of damages sustained is, and while it might be very convenient for the plaintiff to permit him and his witnesses to give the damages suffered in a lump, it would be a very unsafe practice to allow them to state the amount of damages supposed to be sustained, without regard to the facts or knowledge upon which their opinions were based. It is well settled that the practice is not permissible. (*Roberts v. Comm'rs of Brown Co.*, 21 Kan. 248; *Railroad Co. v. Kuhn*, 38 id. 675; *Town Co. v. Morris*, 39 id. 377; *C. K. & N. Rly. Co. v. Neiman*, 45 id. 533.)" (p. 357.)

On this subject it is said in 13 Cyc. 49:

"Expected profits are in their nature contingent upon many changing circumstances, uncertain and remote at best. They can be recovered only when they are made reasonably certain by the proof of actual facts with present data for a rational estimate of their amount, and when this is made to appear they may be recoverable as damages. The mere speculations and conjectures of witnesses who know no facts upon which a reasonably accurate estimate can be made form no better basis for a judgment than the conjectures of a jury without facts."

Aside from the absence of proof of any fact that might furnish a reasonable basis for an estimate of the amount of anticipated profits, the defendant's evidence, which does not seem to be disputed, showed that in order to complete the work, defendant was compelled to pay a much larger sum than the con-

tract price, tending strongly to show that the plaintiff faced a loss, instead of a profit. We are unable to find anything in the evidence to support the verdict awarding plaintiff damages to the extent of $423.80, and in our opinion a new trial should have been granted on that ground, and also because of error in the instruction as to the measure of damages.

The judgment is reversed, and the cause is remanded for further proceedings.