[Civil No. 4228. Filed December 23, 1940.]

[108 Pac. (2d) 561.]

W. E. LA FON, Appellant, v. R. J. MARTIN, Appellee.

Mr. Henderson Stockton and Mr. S. N. Karam, for Appellant.

Mr. H. S. McCluskey and Mrs. E. G. Monaghan, for Appellee.

LOCKWOOD, J.—This is an appeal by W. E. La Fon, defendant, from a judgment in favor of R. J. Martin, plaintiff. The facts in the case may be stated as follows: Ackel Investment Company, hereinafter called the company, was at the times mentioned herein the owner of certain premises in Phoenix, Arizona, known as the Jefferson Hotel. It had on September 14, 1936, leased said premises to defendant for a term of years expiring on September 14, 1941. The lease provided, among other things, as follows:

"5. The lessee has deposited with the lessor the sum of Two Thousand Five Hundred ($2,500.00) Dollars, the receipt whereof is hereby acknowledged, and has also made, executed and delivered his five (5) promissory notes, payable to the lessor, or its order, in the sum of Five Hundred ($500.00) Dollars each, . . . which sum is to be held by the lessor as partial security for the faithful payment of all sums due hereunder and the performance of all agreements by the lessee herein agreed to be by him performed, and the said sum may be applied by the lessor to the payment of any rent remaining unpaid or damage sustained by reason of the breach of any agreement herein contained and to be performed by the said lessee, and if not so applied, shall remain as such security and will be applied by the lessor for the payment of the guaranteed minimum rental on the demised premises as follows: . . . "

This deposit had been duly made by defendant.

On March 10, 1938, plaintiff and defendant entered into a certain option contract for the assignment of the leased premises above referred to, the material parts whereof read as follows:

"Whereas, the said party of the first part is desirous of selling and assigning all of his right, title, interest, claim or demand, in and to that certain lease made and executed by Ackel Investment Company to W. E. La Fon, dated September 14, 1936, beginning on September 15, 1936, and extending to and including September 14, 1941, and covering the following: . (herein description of property) . . .

"Whereas, under and by virtue of the terms of said lease the lessee therein may not sublet or assign said lease without the consent of the lessor therein; and

"Whereas, the said party of the second part is desirous of obtaining said above described lease, and to that end will secure the written consent of the said lessor therein or his assigns,

"Now therefore, for and in consideration of the sum of five hundred dollars ($500.00), the receipt whereof by first party is hereby confessed and acknowledged, the said party of the first part has this day given an option unto the said party of the second part to purchase from the said party of the first part all of his right, title, interest, claim or demand in and to the lease hereinabove described. . . .

"It is mutually understood and agreed that said party of the second part shall have the exclusive right and option to close said option at any time within 23 days from the execution hereof, and said party of the first part hereby agrees that he will, at any time before the expiration of said option, execute and deliver to said party of the second part or to any person named by said party of the second part, upon demand made therefor by said party of the second part, a good and sufficient assignment to said party of the second part of all of the right, title, interest, claim or demand of the said party of the first part in and to said lease hereinabove described and every part thereof.

"It is further mutually understood and agreed that for and in consideration of the execution of said assignment of interest by the said party of the first part,

as aforesaid, the said party of the second part will pay to the said party of the first part the sum of five thousand dollars ($5,000.00), on the following terms and conditions: (terms follow)."

Plaintiff paid to defendant the sum of $500 as set forth in the option, and took the matter of consent up with the company. On March 17th plaintiff notified defendant in writing of his election to exercise his option, in the following language:

"You are hereby notified that the said R. J. Martin, party of the second part in said Option Contract dated March 10, 1938, as aforesaid, hereby elects to exercise the exclusive right and option given to him by said Option Contract to close said option, and hereby, in accordance with the terms of said Option Contract as aforesaid, make Demand Upon You, the said W. E. La Fon, to execute ·and deliver to me a good and sufficient assignment of all of your right, title, interest, claim or demand in and to the lease hereinabove described and every part thereof, as of March 21, 1938, on which date I will be prepared to pay over to you the sum of Three Thousand Dollars ($3,000.00) in accordance with our agreement, said assignment to be free and clear of all indebtedness owing by the said W. E. La Fon."

On March 21st there was held a meeting of the board of directors of the company, at which the following resolution was adopted:

"Special Meeting of the Board of Directors of Ackel Investment Company.

"The meeting was called to order by the President, Mr. Salim Ackel, on the 21st day of March, 1938, and all the members were present.

"The President announced that the present lease on the Jefferson Hotel now in the hands of Mr. Wm. La Fon was to be transferred to Mr. R. J. Martin. The above property is situated as follows and owned by the corporation: (Description follows)

"Upon motion duly made and carried the President was authorized to accept above mentioned transfer of

lease, and have the officers of the corporation execute the necessary papers.

"Being no further business the meeting adjourned."

On the same day Salim Ackel, who was the principal stockholder in the company, entered into the following agreement with defendant:

"Agreement.

"This Agreement, made and entered into this 21st day of March, 1938, by and between Salim Ackel, party of the first part, and W. E. LaFon, party of the second part,

"Witnesseth

"That Whereas, the first party agrees to permit second party to assign all of his right, title and interest in and to that certain lease dated September 14, 1936, between the Ackel Investment Company as lessor and W. E. LaFon as lessee covering the property known as the Jefferson Hotel and more particularly described in said lease, . . . said assignment to be free and clear of all debts due and owing from the said W. E. LaFon, and

"Whereas in and by said lease dated September 14, 1936, it was provided that the lessee should do and perform certain conditions, . . .

"Whereas, in order to carry out the provisions of said lease it is necessary that the said W. E. LaFon leave on deposit with the Dwight B. Heard Investment Company the sum of $1732.80 for the purpose of carrying out the covenants and agreements contained in said lease as hereinabove set forth, said moneys to be used by Salim Ackel for said purposes as in his judgment shall be deemed necessary and proper to carry into effect the provisions hereinabove set forth.

" . . .

"It is mutually agreed that the sum of $1732.80 shall be left on deposit with the Dwight B. Heard Investment company . . .

"It is further mutually understood and agreed that after making all repairs necessary and the return of the inventory satisfactory to both parties, any moneys left remaining will be turned over to the said W. E. LaFon.

"Party of the first part hereby gives and grants to said W. E. LaFon permission to assign his right, title and interest in and to the leases above described to R. J. Martin free and clear of all debts due and owing from the said W. E. LaFon."

After these things had been done, and the assignment was about to be executed, a demand was made upon plaintiff that he pay the sum of $5,000 to the Heard Investment Company, the corporation to which the company had assigned the rents due from defendant on the premises in question, before the lease was assigned to him. This plaintiff refused to do, stating in substance that his business was with defendant and that he had made no promises to the Heard Investment nor anyone except defendant. Plaintiff then produced a check for $3,000 and the promissory notes mentioned in the option agreement, and tendered them to defendant, and asked for an assignment of the lease, but the tender was refused. Thereafter, and on March 23d, plaintiff went to defendant again and demanded in writing that the latter should immediately assign the lease, tendering to him the cash and notes referred to in the option, but defendant merely answered that he would consult his attorney, and refused to accept the tender.

On March 28th defendant, through his attorney, mailed to plaintiff the following latter:

"March 28, 1938.

"Mr. R. J. Martin
    "2090 East Moreland
        "Phoenix, Arizona
"Dear sir:

"You are hereby notified that I have in my possession and ready to be delivered to you upon your compliance with the conditions contained in that certain option contract entered into by W. E. LaFon and yourself and dated March 10, 1938, an assignment of the leases in said option contract referred to.

"For your convenience I am herewith enclosing an unexecuted copy of the said assignment."

and an unsigned copy of an assignment of lease was enclosed.

Nothing further apparently was done in regard to the assignment of lease, and thereafter plaintiff brought this action, which was based on an alleged refusal of defendant to comply with the terms of the option. The damages alleged were the $500 originally paid on the option and the estimated profits on the lease for the balance of its term. Defendant answered, denying a compliance by plaintiff with the terms of the option, and cross-complained alleging his willingness to perform, and that plaintiff had refused to do so, claiming damages therefor. The court found all the material issues of the complaint in favor of plaintiff, and rendered judgment for the $500 paid in advance, with interest, but declined to permit any evidence as to future profits, holding that they were not a legitimate element of damages. It also rendered judgment against defendant on his cross-complaint.

Two appeals were taken, the first being by plaintiff from the action of the court refusing to permit future profits to be considered as an element of damages. This matter was before us in *Martin* v. *LaFon,* 55 Ariz. 196, 100 Pac. (2d) 182, and we held that under the circumstances shown by the record, the court erred in refusing to permit plaintiff to offer evidence on this point. The present appeal is by defendant from the general judgment in favor of plaintiff, and from the judgment denying defendant relief on his cross-complaint.

The primary issue for our consideration in the present appeal is whether the record shows that plaintiff had complied with the conditions precedent imposed upon him by the option contract, and if so, whether

defendant had failed to comply with his agreement, for if the first question be answered in the negative, plaintiff of course cannot recover. There can be no question as to what plaintiff was required to do as a condition precedent to an assignment by defendant. He must (a) obtain the consent of the company to the assignment of the lease in question, and (b) tender to defendant, within the time set forth in the option, the amount which he had agreed to pay for the assignment. The evidence shows conclusively that plaintiff did notify defendant within the proper time that he intended to exercise his option, and tender to him the amount of money which he had agreed to pay for the assignment. But the option provided that it was the affirmative duty of plaintiff to secure the consent of the company to the assignment of the lease, and without this, defendant was under no duty to assign. Does the evidence show that he did this?

██ Upon a comparison of the resolution of the board of directors of the company, the agreement between Salim Ackel, who was in effect the owner of what was a family corporation, and defendant, and the oral testimony offered, we think there is no question that the trial court was justified in its finding that the company did assent unconditionally to the assignment of the lease so far as plaintiff is concerned. Had defendant, upon the facts of the case, delivered to plaintiff an assignment in proper form, the latter could have gone into possession of the premises, and, so long as he complied with the conditions subsequent of the lease, could not have been ejected by the company. Apparently, from the evidence, the reason the deal "blew up" was a construction placed by the company and defendant upon the condition of the original lease which we have quoted above in regard to the deposit by defendant with the company of $2,500 in cash and

$2,500 in notes. They construed that provision as requiring that plaintiff should make a deposit similar to that made by defendants originally under the terms of the lease, which would have required a payment by plaintiff of $5,000 in addition to the amount he had agreed to pay defendant. The only obligation imposed upon him by the option, after the consent of the company as above set forth, so far as defendant was concerned, was to pay the price set forth in the option, and so far as the company was concerned, to continue to comply with the future conditions which the lease imposed upon defendant. Had the company imposed as a condition precedent to the granting of its consent to the assignment a new and additional requirement that plaintiff should do anything more than was required of defendant in the future, under the terms of the lease, the situation would have been entirely different. But the evidence in the record is ample to sustain the finding of the trial court that the consent of the company was granted unconditionally, and that after the granting of such consent, for the first time plaintiff was notified of this additional requirement. As was his right, he refused to comply with it, and tendered payment under the terms of the option. Defendant did not either at the time of the first or at the time of the second tender accept it and offer an assignment in accordance with the conditions of the option, but, on the contrary, twice refused to do so. Under these circumstances, we think defendant's belated offer of March 28th was not sufficient to relieve him of his failure to comply with his agreement. Apparently part of the difficulty arose because defendant believed that he was entitled to draw down the remaining portion of the deposit which he had made with the company when the lease was originally executed, while plaintiff thought that the $5,000 which he was paying bought not only the lease but the remainder of

the deposit. If plaintiff had refused to tender payment under the option without a payment to him of the deposit, or an agreement that any sum remaining thereof should be paid him when the lease expired, it might be that this would have been a breach of the option agreement. But plaintiff's tender was unconditional. He did not say, "I will make you the tender when you agree that I am entitled to draw down the money," but rather, "I here tender you the money which I agreed to pay; make me an assignment in accordance with your agreement." Under these circumstances the question of who the deposit belonged to could not affect defendant's duty to make the assignment, leaving the question of the drawing down of the deposit in case the parties could not agree thereon to future litigation.

Upon the whole record, we are of the opinion that defendant, probably mistaking his rights in the premises, failed and refused to comply with his arrangement after plaintiff had fully performed the conditions precedent imposed upon the latter. Under such circumstances, plaintiff was entitled to consider the option breached by defendant, and to elect to sue for damages for such breach.

Those portions of the judgment of the trial court appealed from, wherein judgment was rendered in favor of plaintiff and against defendant upon the general issues of the complaint and that defendant W. E. La Fon take nothing by his cross-complaint, are affirmed, leaving the case for a retrial upon the measure of damages as set forth in *Martin* v. *LaFon, supra*.

ROSS, C. J., and McALISTER, J., concur.